## McGUIGAN *v.* CHRISTY.

Testator bequeathed one share of his estate to his wife and two shares to the use of his son, an infant, and directed if his son should die, the shares bequeathed to him should be kept invested for fifteen years after testator's death, and if his wife remained a widow, then paid to her, but if she married or died within that time, to his sisters. The son dying in his minority, more than fifteen years after testator's death, his administrator is entitled to the legacy.

IN error from the District Court of Philadelphia.

*March* 14, 15. Case stated. Testator, by his will in 1828, directed the proceeds of his estate should be divided into three parts, one of which he gave to his wife, and directed two to be invested for the use of his son James. He then continued, "In case my son James should die, the money set apart for his use shall be preserved so invested, with the proceeds thereof, for fifteen years after my death; and, in case my wife remains unmarried until the expiration of the said fifteen years, she shall be entitled to receive the whole; but in case she should die or marry before that time, then to be equally divided between my sisters."

He further bequeathed his watch to his brother, to be preserved for the use of his son, until he was of age to wear it, and in case of his son's death to retain it.

The widow married within the fifteen years. The son died in 1845, aged eighteen years. The question was, whether his administrator or the testator's sisters were entitled to the money.

The court gave judgment for the administrator, plaintiff.

*C. J. Biddle* and *Newcombe*, for plaintiffs in error.—The death of the son must have been intended, either simply after testator's death, or before some particular event: 1 Rop. Leg. 406. The only contingency here, was his dying under age: 2 Ld. Ken. 488; if no particular contingency can be collected from the will, it is presumed that a surviving of the testator was intended: 1 B. C. C. 393, 489; 2 Ves. Jr. 501; 1 Hall, 1.

*Guillou*, contrà.—If the son's surviving the testator was not intended as the event on which an absolute estate vested in him, the only other contingency to be gathered from the will, is his living more than fifteen years after the testator. In the former case, the legacy is absolute to the first taker: 2 Stra. 1261; 4 Ves. Jr. 160; 5 Ib. 806; 8 Ib. 12, n. But a gift over, on the death of a legatee, is always presumed to mean on his death, within some designated period—here, the fifteen years, during which the money is to be kept for him: 1 Swanst. 164; 8 Ves. 21, 413; 5 Ib. 810; 7 Sim. 173; Roper. 406–11; 2 Jarm. on Wills, 659–70.

*March* 19. COULTER, J.—The intention of the testator, as collected from the will, is the key to the legal interpretation of the instrument. That intention is more apt to be truly ascertained by close attention to the language of the whole will; and the circum-

stances and family by which testator was surrounded when it was made, than by artificial rules drawn from the books.

The testator had but one child, James, an infant when the will was made. The first provision is a bequest of one-third of his estate to his wife, and the other two-thirds to his son James. But, as James was an infant, testator chose to provide that his share should be preserved, and invested, for the use of his son James, by his executors. But, if James should die, the money set apart for him and the proceeds thereof, shall be preserved so invested for fifteen years after testator's death. When shall the contingency contemplated, to wit, the death of James, happen? Why, obviously, within fifteen years after testator's death. It is precisely as if the clause had been thus, "But if James shall die within fifteen years after my death, then it is my will that the money I have set apart for him, to be invested for his use, shall, nevertheless, remain so invested for the fifteen years."

He then provides that, if his wife shall survive him, and remain unmarried till the end of fifteen years, she shall have the whole amount. But, if she did not, then it should go to his sisters, Catherine and Mary.

Testator evidently intended, by the bequest over of the fund at the end of fifteen years, that it should then be liberated from the force and binding effect of the first bequest to James. In other words, his mind contemplated the contingency upon which it was to go over as having then happened. The fifteen years, therefore, after the death of the testator, was the period during which the contingency must happen, in the event of which the fund was limited over. If the contingency did not occur before, or during that time, the bequest to James became absolute. But James lived several years after the period during which the contingency was to happen, and until he was entitled to take the fund from its investment and enjoy it.

The clause, in which testator gives his watch to his brother, Patrick, to be kept for his son till he arrived at age to wear it— and, in case of his son's death, then over to Patrick—serves to show the leaning and intent of testator's mind: that his only child should have his estate, save what the law gave to his wife. But, as the child was an infant when the will was made, and the testator an old man, he chose to provide that the fund should remain consolidated for fifteen years, during which it was possible the son might die, and for that contingency he provided.

We are of opinion that the son, James, took an absolute estate

in the fund in question, which vested in him fifteen years after testator's death: it was then relieved from all contingencies and limitations.

Judgment affirmed.